UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 1:22-cv-22111-BLOOM/Otazo-Reyes

ROGER AMARGOS,

    *Plaintiff*,

v.

VERIFIED NUTRITION, LLC d/b/a
PROSTAGENIX,

    *Defendant*.

_____/

**DEFENDANT PROSTAGENIX'S REPLY IN FURTHER SUPPORT
OF ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Dated: December 16, 2022

_____
Aaron S. Weiss (FBN 48813)
Email: aweiss@carltonfields.com
Carlton Fields, P.A.
700 NW 1st Avenue, Suite 1200
Miami, Florida  33136
Telephone:  305.530.0050

*Counsel for Defendant ProstaGenix*

TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………………….1

    A. Amargos' Factual Narrative Is Misleading…………………………………………1

    B. Amargos Fails to Meaningfully Address……………………………………………2
       ProstaGenix's Argument That the Eleventh Circuit's
       Test Survives the Supreme Court's Holding in *Morgan*

    C. If the Court Determines That the Prejudice Requirement………………………….2
       Did Not Survive *Morgan*, Federal Common Law—Not
       State Law—Applies To The Question of Waiver

    D. If the Court Determines that State Law (as Opposed..……………………………5
       to Federal Law) Applies to the Waiver Question,
       California Law Should be Applied

    E. Under California Law the Court……………………………………………………6
       Should Compel Arbitration

    F. Even Under Florida Law The Court…………………………………………………..7
       Should Compel Arbitration

      i. A Rule Stating That The Right to Seek Arbitration……………………………8
         is Waived For Good if Not Asserted in the Initial
         Answer is An "Arbitration Specific" Rule—And Can
         Not Be Considered Good Law After *Morgan*

      ii. Under Florida Law, The Holistic Test First Set Out……………………………9
         By the Third DCA in 1966 Should Apply, As Opposed
         to the Bright Line Rule Set Out in Later Cases

CONCLUSION………………………………………………………………………………..10

TABLE OF CONTENTS

Exhibit 1:    Supplemental Declaration
                of Frederick Buckley

Exhibit 2:    Defendant's Motion to Compel
                Arbitration in *Gaudreau v. My Pillow, Inc*.

Exhibit 3:    Defendant's Motion to Compel
                Arbitration in *Steward v. Sage Software, Inc.*

Pursuant to S.D. Fla. L.R. 7.1(c), Defendant ProstaGenix respectfully submits its reply to Plaintiff Amargos' response in opposition ("Opp.") to its motion to compel arbitration ("Motion").[1]

### INTRODUCTION

Amargos' response does not contest that a valid arbitration exists; nevertheless, he seeks to avoid his contractual obligation to arbitrate by erroneously asserting that ProstaGenix has waived its right to arbitrate because it failed to identify arbitration as a defense in the answer it filed shortly before it moved to compel arbitration. Given the early stage of this litigation, Amargos' contention is not supported by the facts or the law.

A. **Amargos' Factual Narrative Is Misleading**

From the early stages of this litigation ProstaGenix, through counsel, has expressed its position to Amargos that this dispute is subject to arbitration. While it was strategizing regarding its response to the complaint, including seeking arbitration, ProstaGenix was required to file an answer or risk being in default. As such ProstaGenix filed an answer on September 6, 2022. [ECF No. 13]. Consistent with S.D. Fla. L.R. 7.1(a)(3), ProstaGenix, through its prior counsel, met and conferred regarding arbitration by phone in September and then by email on October 20, 2022. (*See* Supplemental Declaration of Frederick Buckley, attached as **Exhibit 1**). As memorialized by that email, ProstaGenix's prior counsel left the September **telephonic meet and confer** with the understanding that Amargos' counsel was "going to also research the terms of your client's contractual relationship with our client." *Id*.

While the Answer neglected to assert arbitration, there was no affirmative statement that ProstaGenix was voluntarily and intentionally relinquishing its right to seek arbitration—as would be required under controlling case law. At most, neglecting to mention arbitration in the answer was simple oversight by prior counsel. It is not tantamount to waiver under the controlling legal standard, especially given the fact that Amargos' counsel was already on notice of ProstaGenix's position regarding arbitration since September. Indeed, Amargos' counsel was repeatedly made aware by both prior and present defense counsel that a motion to compel arbitration was forthcoming. There is no waiver or ensuing surprise.

---

[1] Amargos does not to challenge ProstaGenix's position that the Terms and Conditions constitute a binding agreement to arbitrate or that the claims he brings are arbitrable. Accordingly, he has forfeited the right to contest those issues.

To substantiate the waiver theory, Amargos has asserted that counsel performed numerous tasks before the motion to compel arbitration was filed. However, the work that Amargos references is minimal, at best—and far less than the level of work that this Court has previously found insufficient to support a waiver a claim. *See, e.g.*, *Trevisani v. Ocwen Loan Servicing, LLC*, 2017 WL 7731792, at *3 (S.D. Fla. May 3, 2017) (Bloom, J.). Moreover, most of the tasks—participating in a Rule 26 conference, submitting a joint scheduling report, and picking a mediator—were court-ordered tasks which, as this Court has found, do not bear on the waiver analysis. *Id.* And in all events, Amargos' counsel was aware since September 2022 that a motion to compel arbitration would be forthcoming.

### B. Amargos Fails to Meaningfully Address ProstaGenix's Argument That the Eleventh Circuit's Test Survives the Supreme Court's Holding in *Morgan*

Earlier this year in *Morgan*, the Supreme Court "resolve[d] the split over whether federal courts may adopt *an arbitration-specific* waiver rule demanding a showing of prejudice." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1709 (2022). The Eleventh Circuit does not have an arbitration-specific waiver rule. As ProstaGenix discussed in the Motion, the test for waiver—including the requisite showing of prejudice—has been applied in and out of the arbitration context in the Eleventh Circuit. Mot. at 13. Amargos fails to meaningfully engage on this point, and so ProstaGenix maintains the arguments set forth in its initial briefing.[2]

### C. If the Court Determines That the Prejudice Requirement Did Not Survive *Morgan*, Federal Common Law—Not State Law—Applies To The Question of Waiver

If the Court determines that the Eleventh Circuit's non-arbitration specific prejudice requirement was abrogated by the Supreme Court's holding in *Morgan* then, under binding precedent, this Court must make the waiver determination under federal common law.

Amargos contends that "Eleventh Circuit precedent counsels in favor of consulting state law to govern waiver of arbitration agreements… ." Opp. at 5. (citing *Gaudreau v. My Pillow, Inc.*, 2022 WL 3098950, at *7 (M.D. Fla. July 1, 2022) (in turn citing *Burton-Dixie Corp. v. Timothy McCarthy Constr. Co.*, 436 F.2d 405, 408 (5th Cir. 1971) and *Weisbart & Co. v. First Nat'l Bank*,

---

[2] *See also Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988) (allowing late assertion of the defendant's collateral source argument where "it [was] clear that there was no prejudice to" the plaintiff.); *Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1222 (11th Cir. 2012) (allowing the defendant to raise an "anticybersquatting statutory defense a month and a half before trial in a motion for summary judgment, [where the plaintiff] ha[d] not suggested that it suffered any prejudice from the delay in asserting the defense.").

568 F.2d 391, 396 (5th Cir. 1978)). Nevertheless, at the same time Amargos relies on language from several cases holding that "federal law alone governs the court's waiver inquiry," and that "waiver of the right to compel arbitration affects the allocation of power between tribunals, and that federal law, not state law, governs." Opp. at 6.

Given that both partes cite and rely on numerous cases which rule that federal law governs a waiver inquiry, one is left with the conclusion that *Gaudreau* misconstrued binding Eleventh Circuit case law. In *Burton-Dixie*, the old Fifth Circuit did not grapple with the question of whether waiver of the right to arbitration was a question of federal common law or state law. And *Weisbart* is not even an arbitration case. Rather, the first time the old Fifth Circuit addressed this question was in 1977 when it addressed whether "the activities of [one of the parties] constituted a waiver of the right to demand arbitration… [is a] question [that] is one of federal law, given the enactment of the [Federal] Arbitration Act of 1925." *E. C. Ernst, Inc. v. Manhattan Const. Co. of Texas*, 551 F.2d 1026, 1040 (5th Cir. 1977), *opinion modified on reh'g*, 559 F.2d 268 (5th Cir. 1977).

This conclusion was confirmed by Judge Singhaal last year when evaluating an "argu[ment] that Defendants ha[d] waived arbitration, …[u]nder federal common law, [w]aiver is the voluntary, intentional relinquishment of a known right." *Martinez v. MSC Cruises S.A. Co.*, 2021 WL 3700467, at *6 (S.D. Fla. Aug. 20, 2021) (quoting *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1359 (11th Cir. 2018)). *E. C. Ernst* is binding on this Court (and on the court in *Gaudreau*). The question of the whether state law or federal common law controls waiver of arbitration was decided forty-five years ago by the pre-*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) Fifth Circuit.

In their unanimous decision in *Morgan*, the Supreme Court noted that "[i]n their briefing, the parties have disagreed about the role state law might play in resolving when a party's litigation conduct results in the loss of a contractual right to arbitrate" *Morgan*, at 1712. However, the Supreme Court decided to "not address those issues." *Id*. Rather, the Supreme Court noted that "[t]he Courts of Appeals…have generally resolved cases like this one as a matter of federal law, using the terminology of waiver. For today, we assume without deciding they are right to do so." *Id*.

Given that (1) there is a definitive pre-*Bonner* Fifth Circuit statement on the question in *E. C. Ernst*, and (2) in *Morgan*, the Supreme Court explicitly did not disturb the federal appellate courts' understanding of this issue, as ProstaGenix noted in its Mot. at 15, there is no wiggle room for this Court (or even a panel of the Eleventh Circuit) to depart from *E. C. Ernst*.

3

In its Motion, ProstaGenix acknowledged that the magistrate judges in *Gaudreau* and *Steward v. Sage Software, Inc.*, 2022 WL 4537682 (M.D. Fla. Sept. 28, 2022) recently issued reports and recommendations finding that, following *Morgan*, courts in this circuit should dispense with the Eleventh Circuit test entirely and instead look to state law to determine when a party has waived its right to arbitrate. Those cases are the centerpiece of Amargos' argument, which he calls the "majority view." Opp. at 4.

However, *Gaudreau* and *Steward* do not address the binding *E. C. Ernst* line of authority, which was not disturbed in *Morgan*. In fact, the defendants in *Gaudreau* and *Steward* did not make any argument on the state law versus federal common law issue. *See* defendants' motions to compel arbitration in *Gaudreau* and *Steward*, which are attached as **Exhibit 2** and **Exhibit 3**. This Court should not follow *Gaudreau* and *Steward*, which (1) were reached without adversarial presentation on this issue and (2) failed to address binding circuit precedent on the issue.

Amargos also cites to *Soriano v. Experian Information Solutions, Inc.*, 2022 WL 6734860 (M.D. Fla. Oct. 11, 2022) to support his position that the first part of the Eleventh Circuit's test for waiver is no longer good law following *Morgan*. However, in *Soriano* the court concluded that "[w]hat remains of the Eleventh Circuit's waiver test is best left for another day," and then applied heightened substantial participation standard to reach its determination that the defendant waived its right to arbitration. *Id.* at p. 7. In *Soriano*, unlike this case, the defendant "filed two answers, exchanged written discovery, and attended mediation." *Id*. Accordingly, the court applied the first part of the Eleventh Circuit's waiver test in reaching its decision. The same approach was taken in *Warrington v. Rockey Patel Premium Cigars, Inc.*, 2022 WL 3025937, at *2 & n.2 (M.D. Fla. Aug. 1, 2022), where the court applied the first part of the Eleventh Circuit's waiver test post-*Morgan*.[3]

Assuming that the Eleventh Circuit's waiver test is still controlling, this should not be a difficult case. This Court's decision in *Trevisani* is dispositive. In *Trevisani*, this Court evaluated

---

[3] Several post-*Morgan* district court decisions in other circuits have likewise found that federal law, as opposed to state law, controls the arbitration waiver question, even after *Morgan. See, e.g.*, *Vollmering v. Assaggio Honolulu, LLC*, 2022 WL 6246881, at *11 (S.D. Tex. Sept. 17, 2022) (discussing *Morgan* and stating that "whether a party has waived the right to arbitrate is a question of federal law."); *Hudson v. Peak Med. New Mexico No. 3 LLC*, 2022 WL 2904378, at *2, fn. 3 (D.N.M. July 22, 2022) (stating that "*Morgan* did not overturn the general rule that waiver of the right to arbitrate is controlled by federal law."); *McBurnie v. Acceptance Now, LLC*, 2022 WL 17342195, at *2 (N.D. Cal. Nov. 30, 2022) (discussing *Morgan* and stating "[w]aiver of an arbitration agreement governed by the FAA is evaluated under federal rather than state law");

whether a defendant had waived the right to seek arbitration and noted that "[s]ince filing of the original complaint…[the defendant] has filed motions to dismiss, attended oral argument, filed and amended a responsive pleading, propounded written discovery, and attended an ultimately unsuccessful mediation." *Id*. at *3. This Court noted that the was "no case law [cited] to support the proposition that any of these actions alone, or collectively, is inconsistent with the intent to arbitrate, especially where many of the actions were performed in compliance with orders issued by the Court." *Id*. This Court added that, "[a]s of the filing of the Motion [to compel arbitration], no depositions ha[d] taken place and over six (6) months remain[ed] until the scheduled trial." *Id*.

This Court viewed all of those activities with the waiver lense, *before* it proceeded to the prejudice question and found that the defendant had not waived the right to arbitrate. Comparing the facts of this case to those in *Trevisani*, the outcome under the first part of the Eleventh Circuit's waiver test is clear—ProstaGenix did not act inconsistently with its arbitration right.

| *Trevisani v. Ocwen Loan Servicing, LLC* | *Amargos v. ProstaGenix* |
|---|---|
| *Similarities between both cases* | |
| • Defendant filed an answer that did not seek arbitration, participated in a court ordered scheduling conference, and jointly submitted the required joint scheduling report. | • Defendant filed an answer that did not seek arbitration, participated in a court ordered scheduling conference, and jointly submitted the required joint scheduling report. |
| *Differences between the two cases* | |
| • Defendant filed a motion to dismiss and attended oral argument on that motion.<br>• Defendant propounded written discovery to Plaintiff.<br>• Defendant filed an amended answer that still did not seek arbitration.<br>• Defendant participated in mediation.<br>• Motion to compel arbitration filed 6 months before scheduled trial date. | • Defendant did not file a motion to dismiss.<br>• Defendant did not propound written discovery and moved to stay its obligation to respond to Plaintiff's written discovery.<br>• Mediation did not take place before motion to compel arbitration was filed.<br>• Motion to compel arbitration filed nearly 11 months before scheduled trial date. |

Here, ProstaGenix participated in far less litigation activity than the defendant in *Trevisani* and, likewise, did not act inconsistently with its right to arbitrate.

    D. **If the Court Determines that State Law (as Opposed to Federal Law) Applies to the Waiver Question, California Law Should be Applied**

Even after *Morgan*, federal law should govern the waiver question. While Amargos appears to want the Court to follow the faulty approach of *Gaudreau* and apply Florida law, as previously stated, Amargos relies on numerous authorities which state that federal law alone

governs this issue. A finding adopted by this Court in *Gomez v. Allied Professionals Ins. Co.*, 457 F. Supp. 3d 1351, 1364 (S.D. Fla. 2020) (Bloom, J.) (stating that "[w]hether a party waived its right to arbitration is controlled solely by federal law."); *Pierre-Louis v. CC Sols., LLC*, 2017 WL 4841428, at *2 (S.D. Fla. Oct. 26, 2017) (Bloom, J.) (same conclusion). However, should this Court decide that the waiver issue should be decided under state law then the question should be examined under California law, as the contract has a California choice-of-law provision.

In order to avoid the choice-of-law provision, Amargos cites to *Metlife Sec., Inc. v. Holt*, 2016 WL 3964459, at *8 (E.D. Tenn. July 21, 2016) for the proposition that a question of waiver is "one that a court presumptively evaluates." Opp. at 6. However, the court there stated that it "ha[d] to decide which law to apply to this issue—federal law or applicable state law based on the Court's diversity jurisdiction. In addressing waiver of the right to arbitrate, the Sixth Circuit has consistently applied federal law rather than state law." *Metlife*, at *8. In *Metlife*, the court ultimately decided that the question of waiver should be decided under federal law instead of state law.

Amargos cites no authority that (1) first takes the *Gaudreau* state law applies approach and, (2) then opts to ignore a choice-of-law provision. The lack of such authority is telling.

On the other hand, in other contexts, this Court and others apply contractual choice of law provisions to questions related to arbitration. *See, e.g.*, *Wexler v. Solemates Marine, Ltd.*, 2017 WL 979212, at *4 (S.D. Fla. Mar. 14, 2017) (Bloom, J.) (noting that the party seeking to enforce arbitration clause should have discussed whether "the contract law of the Cayman Islands—which the parties agree govern in this case—recognizes the equitable estoppel doctrine."); *Sisca v. Hal Mar., Ltd.*, 2020 WL 6581608, at *5 (S.D. Fla. Nov. 10, 2020) (Bloom, J.) (same holding with respect to a Bahamas choice of law provision); *Gramercy Distressed Opportunity Fund II, L.P. v. Bakhmatyuk*, 2022 WL 4292978, at *14 (D. Wyo. Sept. 15, 2022) (finding that "the parties' choice of law governs equitable estoppel."); *Sheffer v. Samsung Telecommunications Am., LLC*, 2013 WL 7158039, at *6, n.8 (C.D. Cal. Oct. 21, 2013) (finding that "because…the parties agreed to a [Texas law] choice-of-law provision…the issue of whether the clause itself is unconscionable should be answered by looking to Texas law," notwithstanding the contract formation question.).

### E. Under California Law the Court Should Compel Arbitration

As for California law, contrary to Amargos' assertion, it has been the California courts, not ProstaGenix, who developed the principles regarding waiver of a contractual right that ProstaGenix discussed in its motion. The principle is that a party impliedly waives a contractual

6

right—it is undisputed there was no express waiver here—only "when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 637 (Cal. 1995).While Amargos argues that ProstaGenix's acts fit that description, (Opp. at 11), the California Supreme Court found such inconsistency lacking "where the arbitrable issues have not been litigated to judgment," *St. Agnes Med. Ctr. v. PacifiCare of California*, 82 P.3d 727, 736 (Cal. 2003). That is the case here, and thus ProstaGenix has not waived its right to arbitrate.

California courts also follow the rule that "a waiver of contractual rights may be retracted and the rights restored at any time" in the absence of consideration for the waiver or detrimental reliance upon it. *Marcotte v. Micros Sys.*, 2014 WL 5280875, at *5 (N.D. Cal. Oct. 14, 2014) (cleaned-up). Amargos argues that ProstaGenix may not retract its purported waiver because he has detrimentally relied upon that waiver by "litigat[ing] this case for several months and incurr[ing] considerable fees and costs[4] in doing so." Opp. at 12.

However, "incur[ring] considerable attorneys' fees in connection with litigating…does not suffice to establish the necessary reliance to bind" a party to its waiver. *Crown Capital Securities, L.P. v. Liberty Surplus Insurance Corporation*, 2015 WL 12748815, at *10 (C.D. Cal. Mar. 30, 2015) (applying California law). Thus, even if ProstaGenix did waive its right to arbitrate—which it certainly did not—it has since retracted that waiver.

### F. Even Under Florida Law The Court Should Compel Arbitration

Amargos urges the Court to adopt the approach the court followed in *Gaudreau*: (1) first to find that the question of whether arbitration is waived should viewed as a question of Florida law, and then (2) find that Florida law sets out a bright line test: if a defendant answers a complaint and does not mention arbitration, it loses the right to seek arbitration for good. That two-step argument is the centerpiece of Amargos' response to ProstaGenix's motion.

There are two fundamental problems with this line of authority. First, this purported Florida rule—that filing an answer without asserting the right for arbitration acts as waiver—is precisely the type of "arbitration specific" rule that is at the center of the actual holding in *Morgan*. Second,

---

[4] Amargos does not specify what resulted in his incurring "considerable" fees and costs. His own litigation activity has been limited to filing his original action, participating in a mandatory Rule 26(f) conference, submitting a joint scheduling report, picking a mediator, and serving "form" discovery that does not appear to be tailored to the facts of this case.

7

the notion that this rule is representative of the Florida law that is to be followed under *Erie*—at least in a Miami Division case—is doctrinally unsound.

### i. A Rule Stating That The Right to Seek Arbitration is Waived For Good if Not Asserted in the Initial Answer is An "Arbitration Specific" Rule—And Can Not Be Considered Good Law After *Morgan*

Some Florida state courts have identified a bright line test: filing "an answer to the complaint without demand for arbitration constitutes an abandonment of the right to arbitration." *King v. Thompson & McKinnon, Auchincloss Kohlmeyer, Inc.*, 352 So. 2d 1235 (Fla. 4th DCA 1977). This line of authority is the centerpiece of Amargos' Florida law argument. Opp. at 3.

However, outside of the arbitration context, Florida case law across the several DCA's recognizes that arguments that, by rule, should be raised in the answer nonetheless may be raised later "when justice so requires" and "in furtherance of justice." *Nehme v. Smithkline Beecham Clinical Labs., Inc.*, 822 So. 2d 519, 520, fn.1 (Fla. 5th DCA 2002) (trial court erred by not allowing late assertion of a statute of repose argument) (citing *Wayne Creasy Agency, Inc. v. Maillard*, 604 So. 2d 1235, 1236 (Fla. 3d DCA 1992) (trial court erred by not allowing late assertion of a laches argument); *Florida Power & Light Co. v. Crabtree Const. Co., Inc.*, 283 So. 2d 570 (Fla. 4th DCA 1973) (trial court erred by not allowing late assertion of a mitigation argument); *Anglo American Auto Auctions, Inc. v. Tuminello,* 732 So. 2d 1218 (Fla. 5th DCA 1999) (trial court abused its discretion by not allowing late assertion—at the close of evidence in a trial—for the defendant to assert a statute of frauds argument); *Carib Ocean Shipping, Inc. v. Armas*, 854 So. 2d 234 (Fla. 3d DCA 2003) (trial court erred by not allowing late assertion of a workers' compensation immunity argument).

These cases make clear that a defendant may make a late assertion—perhaps even after the close of evidence of a trial—of a broad variety of legal and factual arguments, even when the rules, on their face, would appear to require the arguments to be asserted with in the initial answer.[5] To the extent that some Florida cases single out arbitration and do not allow even a slightly belated assertion of a right to arbitration when justice so requires or in furtherance of justice means that there is a special rule for arbitration. After *Morgan*, that is not allowed. *See Morgan*, at 1714 ("the text of the FAA makes clear that courts are not to create arbitration-specific procedural rules…").

---

[5] If the Court is in agreement with ProstaGenix's argument but believes that its Answer technically needs be amended, ProstaGenix requests that substance prevail over form and the Court construe the record to reflect that as of November 16, 2022, ProstaGenix is seeking to amend its pleadings and other papers to include its argument that this case should be resolved by arbitration.

8

### ii. Under Florida Law, The Holistic Test First Set Out By the Third DCA in 1966 Should Apply, As Opposed to the Bright Line Rule Set Out in Later Cases

In *Gaudreau*, the court cited to *Lapidus*, which does include the language that "[f]iling an answer without asserting the right for arbitration acts as waiver." However, the statement therein is dicta, as the actual issue in *Lapidus* was whether the defendant waived arbitration by filing a summary judgment motion in merits issues. *Id*. at 1103 ("A party who consents the merits of a claim by filing a motion for summary judgment accepts the judicial forum").

What is notable, though, is why the Third DCA used that language at all in *Lapidus*. In 1981, the Third DCA used this language and cited to the Fourth DCA's 1977 decision in *King v. Thompson & McKinnon, Auchincloss Kohlmeyer, Inc.*, 352 So. 2d 1235 (Fla. 4th DCA 1977). In *King* (but unlike in *Lapidus*), the issue was indeed whether the defendant had waived arbitration by not asserting the right to seek arbitration in its answer and, in 1977, the Fourth DCA held that it had, with citation to one of its own decisions from four year earlier: *Gettles v. Commercial Bank at Winter Park*, 276 So. 2d 837 (Fla. 4th DCA 1973).

The actual issue in *Gettles* was different from the one in this case (or in *King*); that case concerned whether a plaintiff waived arbitration by first filing suit in court and then only seeking arbitration in response to the defendant's counterclaim. *Id*. at 839. In working through that question in 1973, however, the Fourth DCA quoted from a part of a 1966 Third DCA decision that said "[t]he plaintiffs, whether bound by the [arbitration] clause or not, [r]epudiated it by commencing this law suit and the defendants joined in the repudiation by answering to the merits without a demand for arbitration or a motion to stay the suit until arbitration could be had." *Id*. at 840 (quoting *Mike Bradford & Co. v. Gulf States Steel Co.*, 184 So. 2d 911, 913 (Fla. 3d DCA 1966). The problem is that the quoted language was not part of the Third DCA's 1966 holding in *Mike Bradford*. Rather, the quoted language—which the Fourth DCA's 1973 *Gettles* decision problematically failed to note—comes from *Mike Bradford's* discussion of a 1957 Minnesota decision: *Anderson v. Twin City Rapid Transit Company*, 250 Minn. 167 (Minn. 1957).

Contrary to what is suggested by *Gettles*, the Third DCA did not set out a bright line rule in *Mike Bradford*. While it discussed *Anderson*, a 1957 Minnesota decision, while surveying the issues, the Third DCA's Florida law holding in *Mike Bradford* was that the answer was just one factor. In fact, in 1966—the first time the Third DCA[6] (or any Florida appellate court) addressed the

---

[6] "[D]ecisions of the district courts of appeal represent the law of Florida unless and until they are

issue, at least in a reported decision, the court ruled that it was "hold[ing] that such a waiver accrues where, as under the circumstances of this case, [1] a party with full knowledge of its rights answers a complaint without raising the issue of arbitration, [2] counterclaims upon the same contract, [3] allows the cause to proceed for five and one-half months and [4] allows a jury to be impaneled." *Mike Bradford*, 184 So. at 915 (numbering added).

Under the *Mike Bradford* test,[7] ProstaGenix would not to be found to have waived its right to compel arbitration. Unlike the 5.5 months at issue in *Mike Bradford*, the time between the answer and the motion to compel arbitration here was only a matter of weeks. Further, while a jury was impaneled before the defendant in *Mike Bradford* sought to compel arbitration, the jury trial here is scheduled for October 23, 2023—almost a year after ProstaGenix filed its motion to compel arbitration. Finally—and perhaps most critically—the defendant in *Mike Bradford* sought affirmative relief by filing a counterclaim while ProstaGenix has sought no affirmative relief in this Court.

Moreover, while the court in *Gaudreau* suggested that Florida law was clear on this point, that is not the case. The only time the Florida Supreme Court has addressed the question, it approvingly cited to the D.C. Circuit's rule: "The essential question is whether, under the totality of the circumstances, the defaulting party has acted inconsistently with the arbitration right." *Raymond James Fin. Services, Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005) (quoting *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir. 1987).

## CONCLUSION

For the reasons set forth herein, and in the motion to compel arbitration, this Court should grant the motion and stay this case.

---

overruled by [the Florida Supreme Court]." *Pardo v. State*, 596 So. 2d 665, 666 (Fla. 1992). The Eleventh Circuit has extended the rule to federal courts, holding that federal courts applying Florida law "are bound to follow the decisions of the state's intermediate appellate courts unless there is some persuasive indication that the highest court of the state would decide the issue differently." *McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002). The Eleventh Circuit has further elaborated that, to the extent there is any disagreement between the intermediate Florida appellate courts, a Florida federal district court applying Florida law should "look to the decisions of the Florida appellate court that would have had jurisdiction over an appeal in this case had it been filed in state court." *Bravo v. U.S.*, 532 F.3d 1154, 1164 (11th Cir. 2008). In this case, that would be the Third DCA.

[7] Under the prior panel precedent rule and the combined effect of *Pardo*, *McMahon*, and *Bravo*, the Third DCA's test from 1966 in *Mike Bradford* would be the controlling test if Florida law applied. *See Nat'l Med. Imaging, LLC v. Lyon Fin. Servs., Inc.*, 347 So. 3d 63, 64, n.2 (Fla. 3d DCA 2020) (noting that, apart from the Florida Supreme Court, "[o]nly the Court, sitting *en banc*, may recede from a prior panel's decision.").

10

|  |  |
|---|---|
| Dated: December 16, 2022 | s/ *Aaron S. Weiss* <br> Aaron Weiss (FBN 48813) <br> Email: aweiss@carltonfields.com <br> Carlton Fields, P.A. <br> 700 NW 1st Avenue, Suite 1200 <br> Miami, Florida 33136-4118 <br> Telephone: (305) 530-0050 <br><br> *Counsel for Defendant ProstaGenix* |